# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| OSCAR GARNER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:21-cv-00998-PLC |
| DANIEL KEEN, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Oscar Garner for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed plaintiff's previous filings in federal court, the Court has determined that plaintiff, while incarcerated, has brought three or more civil actions that were dismissed as frivolous, malicious, or for failure to state a claim. Accordingly, for the reasons discussed below, the Court will deny plaintiff's motion for leave to proceed in forma pauperis, and dismiss his complaint without prejudice to the filing of a fully-paid complaint. *See* 28 U.S.C. § 1915(g).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the St. Charles County Department of Corrections in St. Charles, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming Jail Administrator Daniel Keen, Assistant Jail Administrator John Doe-1, Supervisor of Segregation John Doe-2, and Program Director John Doe-3 as defendants. (Docket No. 1 at 2-4). They are all sued in both their official and individual capacities. Plaintiff's complaint contains allegations regarding the conditions of confinement at the St. Charles County Jail while he was a pretrial detainee.

In the "Statement of Claim," plaintiff asserts that he was transferred to the St. Charles County Jail on October 29, 2020. (Docket No. 1 at 4). Initially, he was placed into the general population. On July 14, 2021, for reasons that plaintiff does not specify, he was moved into the St. Charles County Jail's disciplinary segregation unit. There, he encountered various rules that he believes violates his constitutional rights.

First, plaintiff states that the segregation unit has two telephones that inmates can use to call family, friends, and lawyers during their "assigned recreation time." (Docket No. 1 at 4, 6). While an inmate is housed in the segregation unit, he can only use one of those two phones. (Docket No. 1 at 6). These two phones are essentially speaker phones, as there is "no phone receiver handle." As a result, "none of the phones are private," and plaintiff claims that all the inmates can hear the calls, as well as "what the lawyer is saying." Plaintiff asserts that he uses the speaker phone to talk to his lawyer about "trial preparations," and that the other inmates listen "to the whole conversation" and later ask "him questions about his case and why his lawyer wanted to take certain steps in the criminal case." He does not allege that he has been unable to discuss certain things because of the phone, nor does he suggest that he has been prejudiced or injured in any way. In addition, plaintiff notes that he is allowed to have private attorney visits in person. (Docket No. 1 at 10).

Second, and similarly, plaintiff states that inmates on the disciplinary segregation unit are not allowed to have paperwork, including legal paperwork, in their cells. (Docket No. 1 at 6). Rather, such paperwork must be placed in the "segregation property box," where it can be accessed when an inmate comes out of their cell for their hour of recreation, until "it's time to lock down." As with the phone, plaintiff does not allege that he has been hampered in his legal defense by the limitation on the time he is allowed to review his paperwork.

Third, plaintiff complains that while on the disciplinary segregation unit, inmates "are not allowed to have any books other than a Bible and/or a Quran." More specifically, plaintiff states that he "is not allowed to have any books and [has] been denied any reading material outside" of the aforementioned religious texts. (Docket No. 1 at 7). It is unclear from the complaint whether he means that he is not allowed reading material in his cell, or if the prohibition also applies during his hour of out-of-cell recreation. That is, at one point in the complaint plaintiff states that he has been "denied all reading material," while at another point he explains that "books and/or legal work" is not allowed in cells, but may be reviewed when the inmate has his hour outside the cell. (Docket No. 1 at 5, 7).

Finally, plaintiff asserts that the St. Charles County Jail Rules and Regulations Handbook provides that individuals in disciplinary segregation "will be isolated" in their "assigned cell twenty-three (23) hours per day, with one hour allowed out for personal hygiene, exercise, and phone calls." (Docket No. 1 at 6). Plaintiff alleges that while he has been in disciplinary segregation, he has been denied his out-of-cell time on Fridays and Saturdays every week since July 14, 2021, and that sometimes he does not get his hour until two or three in the morning.

"Upon information and belief," plaintiff alleges that all four defendants "approved and signed off" on the disciplinary segregation policies of the St. Charles County Jail, and that these policies were their "conscious choice" as policymakers. (Docket No. 1 at 7). Plaintiff contends that the four defendants "are the policymakers of the St. Charles County Jail segregation unit [and] also [of] the whole jail." As such, defendants have "approved the above [policies] mentioned in this case." Plaintiff asserts that "defendants have a duty and right to make rules and approve or disapprove policies and make sure that [they] are not violating" the constitutional rights of any inmates.

3

Based on these allegations, plaintiff seeks an injunction against the enforcement of these policies. (Docket No. 1 at 8). He also requests $20,000 in punitive damages from each defendant, $20,000 in compensatory damages, and unspecified nominal damages.

## Discussion

Plaintiff is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983, alleging various constitutional violations while in the disciplinary segregation unit of the St. Charles County Jail. He seeks leave to proceed in this matter without prepayment of the required filing fee. However, while he has been incarcerated, plaintiff has filed at least three prior cases that were dismissed on the basis of frivolity, maliciousness, or failure to state a claim. As such, his motion for leave to proceed in forma pauperis must be denied, and this case dismissed without prejudice to plaintiff refiling a fully-paid complaint.

### A.  28 U.S.C. § 1915(g)

The Prison Litigation Reform Act "enacted a variety of reforms designed to filter out the bad [prisoner] claims and facilitate consideration of the good." *Jones v. Bock*, 549 U.S. 199, 204 (2007). One of these reforms is what is commonly known as the "three strikes" provision of 28 U.S.C. § 1915(g). *Orr v. Clements*, 688 F.3d 463, 464 (8th Cir. 2012). Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This section does not apply unless the inmate litigant has three strikes at the time he filed his lawsuit or appeal. *Campbell v. Davenport Police Dep't*, 471 F.3d 952, 952 (8th Cir. 2006). However, "[a] prior dismissal on a statutorily enumerated ground counts as a strike

4

even if the dismissal is the subject of an appeal." *Coleman v. Tollefson*, 575 U.S. 532, 537 (2015). In other words, "a prisoner who has accumulated three prior qualifying dismissals under § 1915(g) may not file an additional suit in forma pauperis while his appeal of one such dismissal is pending." *Id*. at 1765. For purposes of this section, a dismissal for failure to state a claim counts as a strike whether the dismissal was with prejudice or without. *Lomax v. Ortiz-Marquez*, 140 S.Ct. 1721, 1723 (2020).

### B. Plaintiff's Previous "Strikes"

Review of plaintiff's litigation history in the federal court system shows that plaintiff accumulated at least three "strikes" in the Eastern and Western Districts of Wisconsin. *See Garner v. Huibregtse, et al.*, No. 3:09-cv-301-SLC (W.D. Wis. July 28, 2009) (district court dismissed plaintiff's action for failure to state a claim based on res judicata, and assessed a strike under 28 U.S.C. § 1915(g)); *Garner v. Kirby*, No. 3:14-cv-545-JDP (W.D. Wis. Feb. 9, 2017) (district court dismissed plaintiff's action for factual frivolousness, and assessed a strike under 28 U.S.C. § 1915(g)); and *Garner v. Hill, et al.*, No. 2:17-cv-51-LA (E.D. Wis. Mar. 1, 2017) (district court dismissed plaintiff's action for failure to state a claim, and assessed a strike under 28 U.S.C. § 1915(g)). Based on plaintiff's previous filings, the United States District Court for the Western District of Wisconsin specifically determined that plaintiff was subject to the three-strikes provision of 28 U.S.C. § 1915(g). *See Garner v. Esser, et al.*, No. 3:17-cv-561-JDP (W.D. Wis. Sept. 13, 2017 (discussing plaintiff's prior strikes and determining that he could not proceed in forma pauperis).

In addition, this Court has denied plaintiff leave to proceed in forma pauperis and dismissed two of his complaints on the basis of his having accumulated at least three strikes. *See Garner, et al. v. Keen, et al.*, No. 4:20-cv-1690-RLW (E.D. Mo. May 13, 2021) (denying plaintiff's motion

5

for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(g) and dismissing without prejudice to the refiling of a fully-paid complaint); and *Garner v. Keen, et al.*, No. 4:21-cv-876-MTS (E.D. Mo. July 27, 2021) (same). The Court notes that plaintiff accumulated his strikes before the filing of his complaint on August 10, 2021.

### C. Imminent Danger

Prisoners who have had three previous civil lawsuits or appeals dismissed as frivolous, malicious, or for failure to state a claim must prepay the entire filing fee. *Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir. 1997). Nevertheless, pursuant to 28 U.S.C. § 1915(g), an indigent inmate who has acquired three strikes may still file a lawsuit if he or she is under imminent danger of serious physical injury. *Higgins v. Carpenter*, 258 F.3d 797, 800 (8th Cir. 2001). This exception provides a "safety valve for the three strikes rule to prevent impending harms." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). However, for this exception to apply, an otherwise ineligible prisoner must be in imminent danger at the time of filing. *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998). Allegations of past imminent danger are not sufficient to trigger the exception to § 1915(g). *Id*. Furthermore, the prisoner must present "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Martin*, 319 F.3d at 1050.

Here, plaintiff's allegations do not demonstrate that he is in imminent danger of serious physical injury, or that he is at any risk of impending harm. Two of his claims – regarding private telephone calls and his legal paperwork – concern his access to the courts, while another claim alleges a denial of access to reading material. None of these three claims have anything to do with plaintiff's physical safety. Plaintiff's fourth claim likewise fails to establish imminent danger. While plaintiff complains that he is only allowed outside of his cell for one hour a day in the

disciplinary segregation unit, there are no facts indicating that this puts plaintiff at any risk. Because plaintiff has failed to show that the exception to the three-strikes provision in 28 U.S.C. § 1915(g) applies to him, the Court will deny his motion for leave to proceed in forma pauperis, and will dismiss this action without prejudice to plaintiff refiling a fully-paid complaint.

### D.  Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)

Even if plaintiff was not subject to the three-strikes provision, his case would still be subject to dismissal for failure to state a claim. Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

7

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

As discussed below, if the Court were to ignore plaintiff's status as a three-striker under 28 U.S.C. § 1915(g), and grant his motion for leave to proceed in forma pauperis, both his official and individual capacity claims would still be subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

i. **Official Capacity Claims**

Plaintiff has sued defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating

8

that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, defendants are alleged to be employed by St. Charles County. As such, the official capacity claims against them are treated as being made against the county itself, their employer.

A local governing body such as St. Charles County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Charles County.

    a. Policy

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*,

9

486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Here, plaintiff refers to the "St. Charles County Jail Rules and Regulations Handbook," which allegedly provides that "disciplinary segregation" inmates must remain in their cells twenty-three hours a day; that they are not allowed books except the Bible and Quran; and that they are not allowed to have legal paperwork in their cells. Nevertheless, he has not demonstrated that St. Charles County officials made a deliberate choice to institute a policy that is unconstitutional on its face or in its implementation.

Pretrial detainees cannot be punished, and whether a restriction or condition of pretrial detention amounts to unconstitutional punishment hinges on whether the restriction or condition is reasonably related to a legitimate governmental objective. *See Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). Institutional security is a legitimate purpose. *See Bell v. Wolfish*, 441 U.S. 520, 538-40 (1979); and *Whitfield v. Dicker*, 41 Fed. Appx. 6, 7 (8th Cir. 2002) (explaining that plaintiff's Fourteenth Amendment claims failed because he had not shown that he was confined to administrative segregation for any reason other than institutional security).

In this case, plaintiff has admitted that he was placed into disciplinary segregation at the St. Charles County Jail. He does not allege anywhere in the complaint that this placement was wrongful or unjustified. Plaintiff further fails to allege that the policies regarding disciplinary

segregation in the jail were not related to a legitimate security purpose. Certainly, nothing in the complaint indicates that the policy is meant as a punitive measure. As such, plaintiff has not shown the existence of an unconstitutional policy.

### b. Custom

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

In this case, plaintiff has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct," much less that officials were deliberately indifferent to or tacitly authorized such misconduct. Rather than indicating widespread misconduct, plaintiff focuses on things that have purportedly happened to him. Moreover, as discussed above, he has not demonstrated any constitutional violations whatsoever, let alone a pattern. As such, plaintiff has not established the existence of an unconstitutional custom.

### c. Failure to Train

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability

only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Here, as discussed above, plaintiff has not presented facts demonstrating a "pattern of similar constitutional violations by untrained employees." Indeed, plaintiff has not adequately stated any constitutional violations at all. As such, he has not shown a deliberately indifferent failure to train.

### d. Failure to State Official Capacity Claims

For all the reasons discussed above, plaintiff's facts are insufficient to show that St. Charles County is liable for inflicting upon him a constitutional injury. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, plaintiff's official capacity claims must be dismissed.

### ii. Individual Capacity Claims

Plaintiff has also named defendants Keen, Doe-1, Doe-2, and Doe-3 in their individual capacities, alleging that his constitutional rights have been violated due to disciplinary segregation policies that do not allow him to have private phone calls with his lawyer, that do not allow him to keep legal paperwork in his cell, that prohibit him from having books aside from the Bible or the Quran, and that only provide him with limited out-of-cell time each day. For the following

12

reasons, plaintiff has failed to present an individual capacity claim against any of the defendants that is sufficient for purposes of initial review.

### a. Failure to Assert Personal Responsibility

Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has failed to allege facts connecting each defendant to a deprivation of plaintiff's constitutional rights. To the contrary, plaintiff treats all four defendants as an undifferentiated group, accusing them jointly – and vaguely – of approving and signing off on various policies. This is not sufficient to demonstrate the "causal link to, and direct responsibility for, the deprivation of [plaintiff's] rights." In other words, plaintiff has not shown that each of the four defendants was personally responsible for harming him.

Rather than alleging facts showing how each defendant purportedly violated his constitutional rights, plaintiff appears to hold defendants liable based solely on their positions of authority. This alone, without more, is insufficient to establish defendants' direct involvement or personal responsibility. *See Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a

13

claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"); *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (explaining that it is settled "that a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement"); and *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

For all these reasons, plaintiff has failed to state an individual capacity claim against any of the four defendants. Therefore, the individual capacity claims must be dismissed. Furthermore, as discussed below, plaintiff has not presented sufficient factual allegations to support his claims regarding phones and legal paperwork, access to books, and confinement to his cell.

### b.  Phone and Legal Paperwork Claims

Plaintiff has alleged that because the phones have speakers, he cannot make private phone calls to his lawyer. That is, he states that when he calls his lawyer "to talk trial preparations on the phone," the other inmates in the unit listen to his conversation. Plaintiff also alleges that he is not allowed to have legal paperwork in his cell, and that he can only review his paperwork for the hour that he is allowed outside of his cell. The Court has construed these two claims as alleging an infringement of his right to access the courts.

The United States Supreme Court has stated that it is "established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right requires that prisons provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S.

343, 351 (1996). The right of meaningful access to the courts and to the judicial process extends to pretrial detainees. *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1052 (8th Cir. 1989).

To prove a violation of the right of meaningful access to the courts, a detainee must establish that he has been hindered in pursuing "a nonfrivolous and arguably meritorious underlying legal claim." *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). In order to prove actual injury, the plaintiff must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded. *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). For example, an inmate can show that a complaint that he prepared was dismissed due to a technical requirement that he was prevented from knowing, or that he was kept from filing a complaint for actionable harm at all. *See Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996).

With regard to the lack of private phone calls to his lawyer, plaintiff has not stated a claim. To begin, the mere fact that the phone is essentially a speaker phone does not amount to a constitutional violation. *See Whitaker v. Sullivan*, 2021 WL 4198178 (N.D. Ohio 2021) (explaining that the fact that the phone in a prison unit was a speaker phone was a matter of discomfort and inconvenience, but did "not appear to present serious threats to [plaintiff's] safety"). Furthermore, although plaintiff has "a right to meaningful access to the courts," he does "not have a right to any particular means of access." *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992). Restrictions on telephone usage are not unconstitutional when an inmate has alternative means for contacting family, friends, and attorneys. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1041 (8th Cir. 2012). In this case, plaintiff has not alleged that he has no other means of communicating with his attorney. To the contrary, he acknowledges that he was specifically advised that he could "have a private attorney visit in person."

15

In addition, plaintiff has not demonstrated that he has been injured by his inability to have private phone calls with his attorney while in segregation. There is no indication that he has been impeded in filing a nonfrivolous claim or motion, or that the defense in his criminal case has been hampered in any way. An access to courts claim requires plaintiff to show an actual injury. He has not done this. Thus, plaintiff has failed to state a claim. *See Odom v. Kaizer*, 2009 WL 2709395, at *9 (D. N.D. 2009), *aff'd sub nom*, *Odom v. Burleigh Cty. Det. Ctr.*, 369 F. Appx. 767 (8th Cir. 2010) (denial of a private phone call with an attorney fails to state a claim when plaintiff does not demonstrate an actual injury or prejudice).

Likewise, plaintiff's allegations regarding his legal paperwork fail for the same reasons. He does not contend that he is denied all access to his paperwork, only that his access is limited while he is in segregation. There are no facts whatsoever demonstrating that this limited access has caused him an actual injury. That is, he does not allege that his inability to have his paperwork in his cell has frustrated or impeded his ability to pursue a claim or prepare his legal defense.

For these reasons, plaintiff has failed to state an access to courts claim with regard to either the telephone or his legal paperwork.

### c. Access to Books Claim

Plaintiff states that while he is in disciplinary segregation, he is "not allowed to have any books other than a Bible and/or a Quran." He contends that this rule violates his constitutional rights.

The Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. To that end, there are two ways to determine whether conditions rise to

16

the level of punishment. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Id*. Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. If conditions are arbitrary or excessive, it can be inferred that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon pretrial detainees. *Id*. "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

Here, plaintiff has not presented sufficient facts to demonstrate that the rule disallowing him from having any books save for the Bible or the Quran rises to the level of punishment. For example, there is nothing to indicate that the rule is intentionally punitive towards him, as it appears to be a safety measure applicable to all inmates in segregation. Further, plaintiff acknowledges being in disciplinary segregation, after having been moved there from general population for reasons he does not specify. In any event, given that he is in disciplinary segregation, it stands to reason that the rules are different from general population, in order to maintain institutional security. Nevertheless, plaintiff has failed to allege any facts showing that the rule is not related to a legitimate purpose. He also does not allege that he has been in disciplinary segregation an inordinate length of time without "any books," which is a factor in determining the existence of a constitutional violation. *See Bell*, 441 U.S. at 552. Finally, though plaintiff broadly claims he is "denied all reading material," it is unclear whether that means he simply cannot keep books in his cell, or whether he is also denied access to reading material during his out-of-cell time. For all these reasons, plaintiff's claim that he is not allowed to have any books besides the Bible or the Quran is insufficient to state a constitutional violation.

### d. Confinement to Cell Claim

Plaintiff complains that while in disciplinary segregation, he is only allowed out of his cell for one hour each day, according to jail policy. He further notes that he has been denied his daily hour on Fridays and Saturdays, in contravention of that policy.

As noted above, a pretrial detainee cannot be punished. *Stearns*, 957 F.3d at 906. "In analyzing whether a condition of confinement is punitive, courts decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021). Here, plaintiff has presented no allegations tending to show that being kept in a cell twenty-three hours a day, or being kept in his cell all day on Fridays and Saturdays, amounts to punishment. That is, there are no facts showing this was intentionally punitive. Moreover, he does not demonstrate that the St. Charles County Jail had no legitimate interest in keeping disciplinary segregation inmates in their cells for the majority of each week.

In addition, while plaintiff's claims are analyzed under the Fourteenth Amendment, the duties imposed upon jailers are analogous to those provided by the Eighth Amendment. *See Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010) ("The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees"). Under the Eighth Amendment, restrictions providing even less out-of-cell time have been found constitutionally adequate. *See Wishon v. Gammon*, 978 F.2d 446, 448-49 (8th Cir. 1992) (determining that out-of-cell recreation time of forty-five minutes per week did not violate the Eighth Amendment rights of prisoners assigned to protective custody unit); and *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (stating that a limitation of three hours of recreation time per week did not amount to a constitutional violation).

With regard to plaintiff's out-of-cell time, the Court further notes that plaintiff has not demonstrated any injuries. For example, he has not alleged that a lack of exercise has caused his muscles to atrophy or has negatively affected his health. To that end, there is no indication that his cell is too small or that he is confined with other inmates, such as he cannot move around. Furthermore, plaintiff has not presented facts showing his out-of-cell time is inadequate to provide for his hygiene needs.

For all these reasons, plaintiff's allegations regarding a lack of out-of-cell time is not sufficient to state a claim.

### E. Conclusion

As discussed above, plaintiff is subject to the three-strikes provision of 28 U.S.C. 1915(g). Furthermore, his allegations do not encompass facts demonstrating that he is in imminent danger of serious physical injury. Therefore, the Court will deny plaintiff's motion for leave to proceed in forma pauperis and dismiss this case without prejudice to the refiling of a fully-paid complaint. Even if plaintiff was not subject to the three-strikes provision, the Court notes that this case would still be subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice to plaintiff refiling a fully-paid complaint. *See* 28 U.S.C. § 1915(g). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 28th day of December, 2021.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**